The next case on the calendar is United States v. Clayton Brothers. May it please the Court, my name is Daniel DeMaria. Your Honors, I note from the outset that the allegations of sex abuse and the corresponding searches all took place in 2014. There was some confusion in my brief and in one of the police reports, but that all took place in 2014. Now in this case, the District Court correctly held that a warrantless search took place  The District Court erred, however, in failing to suppress the firearms for two reasons. First, there was no valid third-party consent for searches which were conducted by John Parker, who was a temporary guest and at the behest of law enforcement. And secondly, there was no valid parole authorization for the search. Take the first one. That's based on circumstantial evidence, isn't it? I mean, the conclusion that there was third-party consent here? Your Honor, my position is, first of all, that Jamie Brothers did not have authority to consent and there is very, very scant evidence. He seemed to have the authority to throw your client out of the house. I mean, he left after, at least as far as the parole officers understood, she told him to get out and he got out. Let's assume that is correct, Your Honor. There's two areas this case deals with. One is the garage and one is the attic above the bedroom. Even if Your Honor is correct, based on United States versus Duran, just because she may have had access to the bedroom and to the house itself does not necessarily mean that she had access to the attic or to the garage. In that regard, Your Honors, I would note that— What's the limiting factor as far as the garage is concerned? Why is—is there a rational way of concluding that she didn't have access to the garage? Your Honor, part of the problem in this case is that Jamie Brothers never testified at the suppression hearing and so the government failed to meet its burden of showing that she did have authority or that she did consent. Did she have to testify to that? I mean, the fact that she's living and has control over the property, can't that be inferred from the evidence? All the property? Mr. Brothers put in an affidavit, which is uncontroverted, where he said that he told the family, stay away from my things, stay away from my stuff, and he had a list of items in the garage that belonged to him and which they were told to stay away from. And so, in that regard, I would argue that based on Duran, she had no authority over the garage or over the attic. Furthermore, the reasons the district court gave were clearly erroneous. The district court basically held that the reason consent could be inferred are, first of all, that Jamie Brothers told parole that Clayton Brothers' debit card had been used in Virginia, and secondly, that she called parole and told them that the firearms had been found. It really, really is a stretch to say, based on those two things, that she consented to the search. Why is that? I'm living in a house with my daughter and her boyfriend is there on tolerance of some kind. The boyfriend goes and pokes around in stuff in the house, and he comes up with this evidence. If I didn't think it was okay for him to do that, why am I calling the police and reporting what he found? Why aren't I telling him to get the heck out of the house because he's violating my rights in searching the house? I'm glad Your Honor asked that. That issue itself is in dispute. In one of the Homeland Security reports, the agent wrote that John Parker is the one who contacted them to tell them about the guns. Didn't Officer Lawrence testify that he received a call from Jamie Brothers? He did, Your Honor. That took place some 16 or 18 months after the search. Meanwhile, on the other hand, we have ... That was his testimony at the suppression hearing. In the judge's opinion, in the district court's opinion, she says that it was Jamie Brothers who called the parole officer. It's hard to say that there's any clear error in that determination since it was based on direct testimony at the suppression hearing. Or am I missing something? Your Honor, John Parker wrote a statement saying that he was the one who called Parole Officer Lawrence. That's what the HSI report says. There's conflicting evidence. There's conflicting evidence. The district court seems to have concluded, based on Lawrence's testimony, that it was Jamie Brothers who called. Your Honor, that was clear error. If I recall parole Lawrence's testimony, he even said, I believe or I think he qualified it in some way. But more to the point, again, this is an issue where the government had the burden. They really should have called Jamie Brothers to testify on that issue. Lawrence, when he was leaving, after they went and did the search, they didn't find anything the first time. At the end, say that, you know, ask Parker to look around and if they found anything out of the ordinary, just to let him know. And both Parker and Jamie were there, right? That is correct, Your Honor, but there's nothing in the records. And they didn't, Jamie didn't say, wait a minute, you know, this should be a problem. This is a problem. I mean, you know, I don't, I don't agree that we should be looking for anything for you. She didn't say anything like that, didn't put up any objection or resist in any way. I don't believe there's any evidence in the record, one way or the other, as to what happened after. Well, there's evidence that she was present when they gave the instructions. And indeed, Parker went along and followed those instructions. And Jamie was there when that happened, when the instructions were given. But the record stops at the instructions being given. It doesn't go on to her reaction after those instructions had been given. Your Honor, my second point is that normally when somebody objects, we hear about it. Your Honor, my second point is there's no valid parole authorization for the search. Clayton Brothers fled on April 23rd. Parole Officer Lawrence was aware of it on April 24th. And by that point, he could have violated Clayton Brothers. It doesn't matter if he could have violated Brothers for that. It's his obligation to find out what's going on with Brothers. So if he finds that Brothers has absconded, that's one reason to revoke his parole, but it might not suffice. If he finds that there are guns in the house, that might be a better reason. And why wouldn't he have had the authority, particularly if, as you say, unlike the case we heard earlier, this isn't Jamie Brothers' house. It's Clayton Brothers' house. There's no dispute that he was residing there. Why couldn't the parole officer have searched the crawl space by himself when he went out there? Because that was a pretext for Homeland Security and for the state police. And? To authorize. Why does that matter? I realize that. Under our law. Right, under the Second Circuit law, you've rejected the Second Circuit, the Stalking Horse Doctrine, which I urge you to revisit. Okay, but in any event, as I think has been pointed out, the investigation doesn't necessarily stop at the first parole violation. I mean, that's not the way law enforcement proceeds, is it? Well, then we go to April 28th, the allegations were sex abuse, they searched the computers, and based on the record, it was really Homeland Security. It doesn't seem like Officer Lawrence really did anything with respect to that search, he sort of just stood around, is the impression I get. But they search on April 28th, and they don't find anything. There must be a limit as to how long the parole officer can search for. He cannot continue searching indefinitely once he- I mean, the Stalking Horse has a finite lifetime, is what you're saying. Not just the Stalking Horse, but even if it was Officer Lawrence's own investigation, once he's concluded that Clayton Brothers has left the residence, he can't continue to tear it upside down, searching and searching and searching for more and more parole violations. There must come a point where he's obligated to go and get a search warrant if he wants to continue. Thank you. May it please the court, Rajiv Desanjh for the United States. The district court's decision here is very thorough and well-reasoned. I won't take up the court's time unnecessarily, I want to just make a couple smaller points. The defendant's reliance on Duran in the reply brief, I think, is misplaced. What Duran says is that there's a presumption that the spouse has the authority, unless it's rebutted by the defendant, so that actually, that's a Seventh Circuit case. But even applying that here, the burden would be on Mr. Brothers to show why it wasn't a reasonable assumption, at least, that Jenny Brothers had the authority. Why isn't it enough, why isn't the affidavit enough in which he says there's some property? I said, and I made it clear to everybody, don't mess with my property. What he says is, and the testimony also, was that he said don't touch my stuff, don't get near my stuff. But he didn't prevent his wife, and it's not clear actually who he's saying this to. He never specifies, I told my wife. But he doesn't block the way this court has found, or other courts have found, that if there's no lock or some effort to stop someone from getting in. I'm just saying as far as, he didn't demarcate space that you couldn't go to. It's just, don't mess with my stuff. Yeah, he didn't say, don't go in the room where my stuff is, or don't go up into the space where my stuff is. And also, I think a fact that's important here is that, again, there's no lock. There's some plywood. It's very common to have that over an entrance into an attic for insulation reasons or whatever, and it was easily pushed aside. The search that was conducted here, it did start with allegations of potential production of child pornography. What an officer, as Officer Lawrence testified, he was asking them to look for anything that was odd, and in his mind, he was looking for surveillance cameras or a stash of CDs or something like that. So for John Parker, or for Mr. Parker to go and look around, and it's not really the claim here, but it was a reasonable effort to try to find something like this, and then he came across the guns. And it bears emphasizing that the guns that were found were not just a hunting rifle. This is a full-on arsenal. And so I think that is relevant to the kind of continuing need to try to find these very dangerous items in the house, and he had stashed them in different places around the house. The letter, I think, also, going back to the question of Jamie's authority here over the property, the letter, it is true that it may concern more of an issue about their divorce, but what's needed here is not a title or a deed to the property. Jamie just has to have a quote unquote substantial interest in it, and I think the letter establishes that in spades. Also, as far as the circumstances of when the request was made, Jamie Parker was present. One of the officers testified, I believe it was the parole officer here that Jamie consented to the search. As the district court points out, there was no follow-up question as to what your basis is for that, but there is testimony that she consented. And then there's the circumstantial evidence, as the court has pointed out. She was participating, she was helping them, even in May, she was giving them evidence from the receipt. I think there's no, because I think the district court's decision is so strong on the consent aspect, there is no need for this court to go further to kind of opine on the parole search aspects. And that, it does raise more complicated questions about Sampson and its relation to Huntley. But I think the court can, as it has in the past, not decide here. We do think, though, that even under Huntley, that this search would be justified under the special needs doctrine. Also, again, just for the, again, to get on a factual issue. The issue of who called Officer Lawrence, he testified clearly that it was Jamie. Agent Revered, who is the one who had the notes saying that it was John Parker. But he testified also saying, I misunderstood, I probably wrote the paragraph wrong, was his testimony. And he said that he had misunderstood the state police report that John Parker had found them, and that led him to those notes, to write that in the notes. And again, Officer Lawrence's testimony was consistent with his contemporaries' notes. And that's at the Government Appendix 21, where he states, the wife states that she found a long gun and other items of the residence. And again, Officer Lawrence's case summary is also consistent. So there's, the short point is that, as the court has suggested, there's no basis to find clear error here. In the court's determination about Jamie Brothers approaching and telling them about the results of the search. Unless there's any other questions, I'll rest on the brief. Thank you. Your Honor, as the government noted, this case initially involved allegations of production of child pornography, very serious allegations. We had at least two Homeland Security agents in the residence with parole officer Lawrence and a second parole officer. We need to ask ourselves, why didn't any of those individuals go to the garage? Why didn't any of them go up to the attic? This was not a particularly big property based on the record. The fact that no one thought to look in the attic for any video cameras, for any photos, videos, or in the garage, really suggests that Jamie Brothers may not have consented as to those two areas. Either the garage or the attic. Otherwise, when she's there, why should they limit their search to the house itself without those two additional areas? And those are areas where many criminals store illegal items. They don't simply keep them in the house in plain view. They'd go up to the attic, hide it there, go to the garage, hide it there. The officers testified here, right? At the special hearing, or one of them? Somebody testified. One of them did. Yeah, and you or a predecessor counsel, whoever was representing the defendant at the time, had the opportunity to inquire as to what happened with why they didn't search these areas, or did Jamie Brothers object, or what have you, or to call the other officers who were present and ask them if you weren't satisfied with the answers you got from the one who did testify, right? Right, I was not a predecessor. I was not counsel in the court below at the timeless suppression hearing I took place before. Right, but whoever it was who was representing your client had the opportunity to ask any questions that they wanted about what Ms. Brothers' reaction was to the presence of the officers or to the instructions that were given about look around and see if you find anything. That's a good point, Your Honor, but what I will note is that it really sounds like parole officer Lawrence was doing absolutely nothing during this search. And again, it leads to an inference that perhaps those areas were off limit, though your Honor's point is well taken, except to any further questions, I conclude my submissions. Thank you both for your arguments. We will take the matter under submission.